**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 20-80013-CR-Marra

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs.

**DUSKO BRUER,**

    **Defendant.**
_____/

**DEFENDANT'S SENTENCING MEMORANDUM AND**
**REQUEST FOR A REASONABLE SENTENCE**

Defendant, **DUSKO BRUER ("Bruer")**, by and through undersigned counsel, hereby files this Sentencing Memorandum and asks this Court to impose a reasonable sentence, all facts and circumstances considered, of three (3) years probation.

## I.    INTRODUCTION

In light of the mitigating factors set forth herein, Bruer respectfully requests this Court impose a probationary sentence and extensive community service. Such a sentence would be sufficient—but not greater than necessary—to satisfy the factors outlined in 18 U.S.C. § 3553(a). See Kimbrough v. United States, 552 U.S. 85, 101 (2007). Except for the improper conduct at issue here (for which he takes full responsibility), Bruer has led an exemplary and law-abiding life. Bruer's complete and total early acceptance of responsibility, extraordinary cooperation with the Government, low risk of recidivism, payment of presentence restitution in the amount of $500,000, and the significant emotional, psychological, public and private embarrassment, as well as the negative impact on him which he will continue to face as a result of his conduct all provide ample justification for the Court to impose a probationary sentence, though it is below the presumptively

not reasonable advisory sentencing guideline range. United States v. Agbai, 497 F.3d 1226 (11th Cir. 2007) ("[T]rial courts are not permitted to presume that a guideline sentence is reasonable.").

## II.   PROCEDURAL HISTORY

1. On January 20, 2020, Bruer was charged by Information with one (1) count of attempting to evade or defeat tax, in violation of 26 U.S.C. § 7201 (Count 1) and one (1) count of failure to file a report of foreign bank or financial account, in violation of 13 U.S.C. §§ 5314 and 5322 (Count 2). (D.E. 1).

2. On April 3, 2020, Bruer pled guilty to the Information. (D.E. 16).

3. On April 3, 2020, this Court initially set Bruer's sentencing hearing for June 12, 2020, (D.E. 19), which was subsequently reset to August 28, 2020, (D.E. 22), reset again to October 16, 2020, (D.E. 28), reset for January 22, 2021, (D.E. 30), and, finally, reset for May 14, 2021, (D.E. 31).

## III.   ADVISORY GUIDELINES CALCULATIONS

### A.   UNCONTESTED GUIDELINE PROVISIONS

U.S.S.G §2T1.1 is the applicable guideline for violations of 26 U.S.C. § 7201. The corresponding guideline for violations of 31 U.S.C. § 5314 is U.S.S.G. §2S1.3. Both Counts are grouped under U.S.S.G. §3D1.2(c) because one of the Counts embodies conduct that is treated as a specific offense characteristic in the guideline applicable to the other Count. U.S.S.G. §2S1.3(c) provides that the most appropriate guideline from Chapter Two, Part T should be applied if the offense was committed for the purposes of violating the Internal Revenue laws, if the resulting offense level is greater than that determined by §2S1.3. However, since the calculation under §2S1.3 produces a higher offense level, that guideline is applied. See U.S.S.G. §2S1.3(c).

2

Under U.S.S.G. §2S1.3(a)(2), the base offense level is six (6), plus the number of offense levels from the §2B1.1 table. Pursuant to a written Plea Agreement, the Government and Bruer jointly recommend this Court find the value of the funds to be between $3,500,000 and $9,500,000. (D.E. 17). This results in an additional eighteen (18)-level increase to the base offense level. See U.S.S.G. §2B1.1(b)(1)(J). Per the Plea Agreement, the Government and Bruer agreed two (2) more levels are added under §2S1.3(b)(2) because he was convicted of an offense under Subchapter II of Chapter 53 of Title 31, United States Code, and the offense was committed as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period. (D.E. 17).

According to the Plea Agreement, the base offense level should be reduced by two (2) points for acceptance of responsibility under U.S.S.G. §3E1.1(a). (D.E. 17). The Government has also agreed to file a motion requesting an additional one (1)- level decrease pursuant to U.S.S.G. §3E1.1(b) due to Bruer's substantial and timely cooperation with the investigation of his misconduct. (D.E. 17).

**B.     TOTAL OFFENSE LEVEL**

Consequently, it is agreed that Bruer's nonbinding, merely "advisory," and presumptively not reasonable total offense level should be twenty-three (23). A total offense level of twenty-three (23) and criminal history category of I results in an advisory guideline range of forty-six (46) to fifty-seven (57) months imprisonment. However, that range seriously overstates the seriousness of this offense. As noted further below, several mitigating factors support a far lower sentence as being reasonable.

## IV.     REQUEST FOR A REASONABLE SENTENCE

As this Court well knows, "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." Nelson v. United States, 555 U.S. 350, 352 (2009) (emphasis on original); see also Gall v. United States, 552 U.S. 38, 39 (2007) (noting that a District Judge **"may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented"**). "The corollary of that proposition is that district judges have an obligation to consider whether a sentence other than a Guidelines sentence would be sufficient, but not greater than necessary, to serve the purposes of sentencing" under 18 U.S.C. § 3553(a). See United States v. Corsey, 723 F.3d 366, 382 (2d. Cir. 2013) (Underhill, J., concurring).

Moreover, unless otherwise prohibited by law, this Court "may consider, without limitation, any information concerning the background, character and conduct of [a] defendant." U.S.S.G. §1B1.4; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

18 U.S.C. § 3553(a) obliges the Court, "in determining the particular sentence to be imposed[,]" to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to—
>
>> (A)    reflect the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense;
>>
>> (B)    provide adequate deterrence to criminal conduct;

   (C) protect the public from future crimes of the defendant; and

   (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

 (3) the kinds of sentences available;

 (4) the kinds of sentence and the sentencing range established for—

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

     \*   \*   \*   \*

 (5) any pertinent policy statement—

     \*   \*   \*   \*

 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

  Bruer respectfully asks this Court to look beyond the advisory sentencing guidelines range and instead focus on the principles pronounced by the United States Supreme Court and the factors set forth in 18 U.S.C. § 3553(a), and thereafter impose a reasonable sentence.

## A. MITIGATING FACTORS

### 1. THE GUIDELINES OVERSTATE THE SERIOUSNESS OF THE OFFENSE

In <u>Pepper v. United States</u>, 131 S.Ct. 1229, 1240 (2011), the Supreme Court emphasized the need for individualized sentencing, reiterating "the principle that 'the punishment should fit the offender and not merely the crime.'" (quoting <u>Williams v. New York</u>, 337 U.S. 241, 247 (1949)); <u>see</u> <u>also</u> <u>Miller v. Alabama</u>, 567 U.S. 460, 470 (2012) (noting that "punishment for crime should be graduated and proportioned to both the offender and the offense").

Here, the primary factor driving the advisory guideline range is the amount of funds involved. While Bruer and the Government jointly agreed to recommend that this Court find the amount of funds involved is between $3,500,000 and $9,500,000, such an amount significantly overstates the seriousness of the offense.[1] Indeed, this one variable is responsible for an eighteen (18)-level upward adjustment to the total offense level. Federal Judges around the country have voiced serious concerns with the loss guideline, U.S.S.G. §2B1.1, because it lacks any sort of empirical basis. U.S. District Judge Jed S. Rakoff has written that the loss guideline reflects "an ever more draconian approach to white collar crime, unsupported by any empirical data." <u>United States v. Gupta</u>, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012). The loss guideline "is fundamentally flawed" and, "unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." <u>Corsey</u>, 723 F.3d at 377, 379 (Underhill, J., concurring); <u>see</u> <u>also</u> <u>United States v. Adelson</u>, 441 F.Supp.2d 506, 512 (S.D.N.Y. 2006) (emphasizing the "utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic,

---

[1] As noted elsewhere, the tax loss is less than $3,500,000 and more likely closer to $2,789,538 of which Bruer has prepaid—to the Clerk of Court—$500,000.

as well as the harm that guideline calculations can visit on human beings if not cabined by common sense").

"The Guidelines themselves acknowledge that the offense level resulting from the loss determination may 'substantially overstate the seriousness of the offense' warranting a downward departure." United States v. Lamonda, 2008 U.S. Dist. LEXIS 178, 66 (M.D. Fla. 2008) (citation omitted) aff'd 384 Fed. Appx. 944 (11th Cir. 2010). There are particular scenarios for such a departure, one of which includes those cases where "the defendant's effort to remedy the wrong merits consideration, as, for example, where he makes extraordinary restitution or, in a fraudulent loan case, where he had sufficient unpledged assets to cover the loss." Id. (citing United States v. Roen, 279 F. Supp. 2d 986, 990-91 (E.D. Wis. 2003)) (emphasis added).

Bruer's work to fully satisfy his outstanding tax liabilities is further detailed below; however, to date, Bruer has engaged in herculean efforts to pay his restitution—**$500,000 of which he has already paid to the Clerk of Court**. Moreover, consideration should be given to the fact that Bruer is a first-time, nonviolent offender. Thus, this Court should vary downward to account for the gross inflation of the advisory guidelines by U.S.S.G. §2B1.1 and how they unjustly overstate the seriousness of the offense conduct at issue here.

### 2. THE HISTORY AND CHARACTERISTICS OF DUSKO BRUER

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Yet these factors are given no weight in the guidelines calculation. Indeed, the Guidelines recognize only the defendant's criminal record—providing for higher offense levels for a greater criminal history, rather than reductions for no prior record. See Rita v. United States, 551 U.S. 338, 364-65 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing

7

ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that § 3553(a) authorizes the sentencing judge to consider."); see also United States v. Prosperi, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming a downward variance from an advisory guideline range of 87–108 months to home detention because the guidelines did not take into account the personal characteristics of the defendant); United States v. Martin, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on the defendant's "personal qualities indicating his potential for rehabilitation"). Therefore, we urge the Court to balance the presumptively not reasonable federal sentencing guideline calculations by giving fair and due consideration to the history and characteristics of Bruer that weigh heavily in favor of a significantly below-guidelines sentence.

Bruer was born in Dubrovnik, Croatia on June 27, 1952. A self-described "broken old man" and "abject failure," the trajectory of Bruer's life is characterized by tragedy and loss, and merits special consideration by this Court. Until the age of fourteen (14), Bruer enjoyed a relatively normal and happy life in communist Croatia as one of two sons of Gjuro Bruer, a ship captain, and Nada Bruer, a university professor. Unfortunately, the single most formative event of Bruer's life was a car accident in 1967 that killed his mother and left his father severely disabled. The loss of his mother destroyed the foundation of Bruer's family unit, and he never fully recovered from this emotionally or psychologically. Bruer felt "abandoned" and "betrayed" by life. The impact of his mother's sudden death permeated throughout the course of Bruer's life and manifested itself in ways that he neither foresaw nor fully realized. This deep scar of psychological abandonment repeated itself when Dusko was divorced by the mother of his two children.

Faced with little hope and few prospects for the future, Bruer was sent to the United States in 1968 ostensibly to live with an uncle in search of a better life, but this move was actually a means of escaping his difficult past. Already dealing with feelings of isolation and lacking a stable family life, Bruer was enrolled in boarding school in Connecticut shortly after his move to the United States, which only exacerbated his feelings of alienation and abandonment. Bruer's stint in Connecticut for boarding school was cut short due to financial hardship, and he subsequently moved to Mobile, Alabama to live with his cousin.

While this new chapter of his life began on good footing (in 1971 he enrolled as a student at the University of South Alabama), it quickly became another turbulent phase of his life. In 1972, while residing with his cousin, Dusko was falsely accused of making advances towards his cousin's wife. In reality, the woman was having an affair with a man named David Head. The situation resulted in the dissolution of his father and uncle's very close relationship, which Bruer felt partially responsible for even though he never attempted to seduce his cousin's wife or have an intimate relationship with her.

The years between 1972 and 1999 were marked by relative ease. In 1983, Bruer married Valerie La Point, and by 1985, his sons Gjuro and Niko had both been born. During this period Bruer began to experience his first bit of professional success as a salesman of farming equipment and machinery. In 1999, Bruer faced a brutal divorce from his wife, Valerie. She had been unfaithful—carrying on a secret relationship with David Head (the same man who had an affair with his cousin's wife in 1972). The fallout from his divorce left Bruer utterly lost, abandoned, and feeling more isolated than ever before.

With few options left for him in Alabama, Bruer left the United States and travelled extensively in a desperate attempt to overcome his feelings of abandonment and depression before

9

settling in Palm Beach County, Florida, and Eldora, Iowa, where he eventually started the business ventures that form the basis of the charges against him today. Despite his divorce, Bruer has always tried to be a caring father, (now) grandfather, and brother. Bruer cherishes his relationships with his family and has expressed on numerous occasions the immense shame and remorse he feels for the pain he has caused his children because of his behavior.

We urge this Court not to define Bruer by the conduct at issue here. In its remarks on the effect of incarceration on first-time, nonviolent offenders, the First Circuit in Prosperi recognized the punishment inherent to those who are thrust into the criminal justice system:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed.

686 F.3d at 48.

Bruer's personal characteristics and life history cry out for significant mitigation.

### 3. BRUER'S EXTRAORDINARY COOPERATION AND ACCEPTANCE OF RESPONSIBILITY

One of the goals of sentencing is rehabilitation. See Williams v. New York, 337 U.S. 241, 248 (1949). A defendant's admission of responsibility or expression of contrition "is often a significant first step towards his rehabilitation and, for that reason, deserving of a possible reward in the form of a lessened sentence." Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir. 1981).

Furthermore, "[a] sentencing court has the power to consider a defendant's cooperation under §3553(a), irrespective of whether the Government files a §5K1.1 motion"). United States v. Robinson, 741 F.3d 588 (5th Cir. 2014); see also United States v. Landrón-Class, 696 F.3d 62

(1st Cir. 2012); United States v. Massey, 663 F.3d 852 (6th Cir. 2011); United States v. Leiskunas, 656 F.3d 732 (7th Cir. 2011); United States v. Doe, 398 F.3d 1254 (10th Cir. 2005).

Within one week of the execution of the search warrant in this case, Bruer began cooperating with the Government. The extremely complex and intimate nature of this case, coupled with Bruer's aggressive and substantial cooperation saved the Government hundreds of hours of time and avoided the significant costs associated with trial for both this Court and the Government. Bruer has openly and honestly disclosed information relating to his offenses and provided his best, good-faith effort to assist the Government with its investigation.

Bruer's significant, indeed, *extraordinary* cooperation and complete, early acceptance of responsibility for his actions weigh in favor of this Court granting a downward departure or variance below the presumptively not reasonable advisory guideline range. See United States v. Gardellini, 545 F.3d 1089 (D.C. Cir. 2008) (imposing sentence of probation for defendant convicted of filing false income tax return, where guidelines called for 10-16 months' imprisonment, because defendant "cooperated with authorities and accepted responsibility…to an extraordinary degree.").

4. **BRUER'S EARLY EFFORTS OF RESTITUTION**

Pursuant to his Plea Agreement, Bruer has agreed to pay $2,789,538 of restitution to the IRS. (D.E. 17). Bruer is working diligently with the IRS to fully satisfy his outstanding tax liabilities and has made enormous strides to pay his restitution since he began cooperating with the Government. As previously mentioned, Bruer already paid $500,000, through undersigned counsel's escrow account to the Clerk of Court.

Bruer is also in the process of selling American Made Equipment, the company he tirelessly worked over ten (10) years to build, which should fetch an additional $1,000,000 to $2,000,000

11

to be applied towards his restitution. The 150,000-square-foot farm machining plant has been listed for sale. Bruer, through his counsel, has been working with the Government to assure that the net sales proceeds will be paid to the U.S. Department of Treasury to be applied to the tax restitution which will be ordered by the Court. These actions not only demonstrate Bruer's unconditional acceptance of responsibility, but also the extraordinary measures he is willing to take to atone for his crime.

Bruer respectfully urges this Court to consider his substantial efforts to fully pay his restitution promptly when fashioning his sentence. See United States v. Kim, 364 F.3d 1235 (11th Cir. 2004) (holding payment of $280,000 in restitution by defendants, a husband and wife, after they pled guilty to conspiracy to defraud the United States and fraudulently obtaining government assistance, respectively, demonstrated their sincere remorse and acceptance of responsibility and was extraordinary enough to justify downward departure from 24 months to probation and home detention where defendants dipped significantly into their life savings and voluntarily undertook enormous amount of debt to pay restitution.); see also United States v. Oligmueller, 198 F.3d 669, 672 (8th Cir. 1999) (upholding downward departure for extraordinary restitution where defendant made voluntary payments a year prior to indictment, often worked sixteen-hour days on his farm to raise the money, took on a second job, turned over his life insurance policy and his wife's certificate of deposit, and gave up his home.).

5. **BRUER'S CHARITABLE WORKS AND COMMUNITY INVOLVEMENT**

Courts have recognized that a defendant's charitable works and community involvement can justify a downward departure or variance. See United States v. Thurston 544 F.3d 22 (1st Cir. 2008) (affirming District Court's sentence of 3 months rather than 60-month guideline term for Medicare fraud conspiracy of more than $5 million, citing, among other things, defendant's

12

charitable work, community service, and generosity with his time); United States v. Cooper, 394 F.3d 172 (3d Cir. 2005) (affirming 4-level downward departure to probation in securities fraud and tax evasion case based on defendant's good works where guidelines called for 14-21 months; defendant did not simply donate money to charity but made "hands on personal sacrifices which have a dramatic and positive impact on the lives of others."); United States v. Serafini, 233 F.3d 758 (3d Cir. 2000); United States v. Woods, 159 F.3d 1132 (8th Cir. 1998) (defendant's exceptional charitable efforts, in taking in two troubled young women, financing their private education, and assisting an elderly friend's move from a nursing home, justified a downward departure).

Due to the difficult circumstances of his childhood and formative years, Bruer understands the value of giving back to the community and helping those in need. In 1992, Bruer went to extreme lengths to secure the safety of his fifteen (15)-year-old niece by arranging for her to come to the United States so she could escape the brutal Croatian Civil War which occurred between 1991 and 1995. Moreover, for years Bruer has allowed local students from Eldora High School in Iowa to use the space within one of his 75,000-square-foot warehouses to practice and play baseball, as necessary due to the gulag-like weather conditions in Iowa between November and March.

Bruer is not now, nor was he a tax "protestor." Bruer is a man who "bottomed out" following his wife's betrayal and divorce.[2] He is not a man motivated by greed or personal gain, but rather Bruer cares for others and strives to help those in need:

> If ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very

---

[2] Bruer's serious emotional and psychological issues will be addressed separately by a sealed letter report at the time of sentencing in open Court.

> future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, "the history and characteristics of the defendant."

United States v. Adelson, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006), aff'd 301 Fed. Appx 93 (2d Cir. 2008).

### 6. BRUER'S AGE AND PRECARIOUS HEALTH

"While the Guidelines discourage the use of age as a reason for departure . . . it is entirely rational to consider this factor in setting a sentence in the Court's discretion." See United States v. Emmenegger, 329 F.Supp.2d 416, 428 (S.D.N.Y. 2004); see also Pepper, 562 U.S. 476 at 504 (remanding for resentencing because court of appeals erred in "categorically precluding" the District Court from exercising its discretion based upon policy disagreements); United States v. Simmons, 568 F.3d 564, 569 (5th Cir. 2009) (remanding for reconsideration because the district court erroneously believed that it could not disagree with the guideline policy statement regarding age because "Kimbrough does not limit the relevance of a district court's policy disagreement with the Guidelines to the situations such as the cocaine disparity and whatever might be considered similar").

Bruer was diagnosed with Melanoma this past year, the most serious type of skin cancer. He previously had Stage 2 Melanoma and was in remission until this year. Since his initial bout with cancer, Bruer's dermatologist has removed pre-cancerous cells from his face every six (6) months. Bruer also suffers from Dupuytren's Contracture, which is a condition that causes "progressive tightening of the bands of fibrous tissue (fascia) inside the palms, causing a curling in of the fingers that eventually can result in a claw like hand. (D.E. 23). As a result of this serious affliction, Bruer requires an injection of Xiaflex every six (6) to eight (8) months to treat the

ailment. The cost of such treatment is sizeable, ranging from $4,000 to $5,000 per treatment. (D.E. 23). In addition to these illnesses, Bruer has experienced significant loss of hearing (he wears hearing aids in both ears) and dental problems. Bruer is now receiving treatment from six (6) different physicians to address the considerable array of health-related challenges he has.

Bruer respectfully asks the Court to consider his age and health when fashioning its sentence. See United States. v. Lee, 725 F.3d 1159 (9th Cir. 2013) (remanding for resentencing where 72-year-old woman was convicted of distributing meth and sentenced to 96 months' imprisonment, which was below mandatory minimum because of cooperation, so the district court could "give more serious consideration to whether to impose" a sentence "that effectively condemns the defendant, who provided extensive assistance to the government, to death in prison for an offense of the nature involved."); see also United States v. Velasquez, 762 F.Supp. 39, 40 (E.D.N.Y. 1991) (finding defendant's life-threatening cancer warranted downward departure); United States v. Baron, 914 F. Supp. 660, 662-665 (D. Mass. 1995) (departing downward in bankruptcy fraud case from range of 27-33 months to probation and home detention for a 76-year-old defendant with cardiac problems and cancer – which could be made worse by incarceration).

Along with his age (67 years old), this combination of health and physical ailments places Bruer at risk of contracting a severe case of COVID-19, although Bruer has been vaccinated. The World Health Organization explained that, "individuals at highest risk for severe disease and death include **people aged over 60 years and those with underlying conditions such as…cancer**." See Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), World Health Organization (Feb. 28, 2020), at 12 (emphasis added)[3].

---

[3] See: https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf (finding fatality rates for patients with Covid-19 and comorbid conditions to

Older inmates, particularly those first incarcerated at an older age, have a much different experience of incarceration than younger inmates, and their specific needs are not generally addressed by typical correction programs. Moreover, in the event a lengthy custodial sentence is imposed, there is a strong likelihood of Bruer falling quite ill, possibly even perishing in prison, should he contract a severe case of COVID-19, despite his vaccination which is not 100% effective, due to his underlying health issues.

This Court should depart or vary downward from the advisory guideline range to account for the seriousness of Bruer's health and his advanced age.

7. **BRUER'S LOW LIKELIHOOD TO RECIDIVATE**

In 2004, the Federal Sentencing Commission published a report which presented a statistical analysis of the characteristics associated with the likelihood of a person recidivating. The study showed that (1) those sentenced under economic crime guidelines were less likely to recidivate than those sentenced under other guidelines; (2) individuals over the age of fifty (50) were the least likely to reoffend; (3) first-time offenders were less likely to recidivate than repeat offenders; (4) those who were employed were less likely to recidivate than those who were unemployed; (5) non-drug users were less likely to recidivate than drug users; and (6) people who received non-incarcerative sentences were less likely to reoffend than those who received sentences involving incarceration. See "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," United States Sentencing Commission (May

---

be: "13.2% for those with cardiovascular disease, 9.2% for diabetes, 8.4% for hypertension, 8.0% for chronic respiratory disease, and 7.6% for cancer").

2004) at 28-32.[4] Each of these aforementioned factors strongly supports a finding that Bruer poses virtually no risk of reoffending.

The Eleventh Circuit discussed the likelihood of recidivating in United States v. Clay, 483 F.3d 739 (11th Cir. 2007). In Clay, the District Court sentenced the defendant to 60 months, even though his guidelines were 188-235 months, because of the District Court's view that the defendant was not likely to re-offend. Id. at 742-43. In affirming the defendant's sentence, the Eleventh Circuit stressed that a sentencing Court is "require[d] . . . to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend." Id. at 745. Because the defendant in that case had "fundamentally changed since his offense" and "pose[d] a lesser risk to the community," the Eleventh Circuit determined that the sentencing court was correct in issuing a variance. Id. at 746. See also Gall, 552 U.S. at 57–59 (2007); United States v. Cherry, 487 F.3d 366, 369–70 (6th Cir. 2007) (granting significant downward variance from the guideline range where the defendant presented a low risk to reoffend); Prosperi, 686 F.3d at 48 (affirming non-incarcerative sentence where there was no risk of recidivism).

Bruer has religiously observed the conditions of his release pending disposition of this matter and reported to his probation officer without fail. See United States v. Munoz-Nava 524 F.3d 1137 (10th Cir. 2008) (holding district court's sentence of one year and one day in prison plus one year of home detention reasonable in drug case where guidelines were 47-56 months, partly because of defendant's "behavior while on a year-and-a-half pretrial release, which the district court found to be exemplary" showed the defendant was unlikely to reoffend).

---

[4] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

Bruer respectfully requests the Court, when fashioning his sentence, to consider his extremely low likelihood of reoffending.

## V. CONCLUSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate . . . the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996). For the reasons stated above, the facts and circumstances of this case and, Bruer's personal history, individual characteristics, charitable works, previous unblemished record, age, and health warrant the imposition of probation with special conditions as the Court deems appropriate, which would be a reasonable sentence though it is below the presumptively not reasonable advisory sentencing guideline range.

Respectfully submitted,

**GRAYROBINSON, P.A.**
Attorneys for Defendant
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
joel.hirschhorn@gray-robinson.com

By: s/Joel Hirschhorn
JOEL HIRSCHHORN
Florida Bar #104573

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 3, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/Joel Hirschhorn<br>
JOEL HIRSCHHORN